# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PATRICIA ASHBROOK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-324-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Patricia Ashbrook requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-four years old at the time of the administrative hearing (Tr. 42). She has an associate degree and has worked as a dishwasher/janitor and counter attendant (Tr. 44, 65-66). The claimant alleges that she has been unable to work since an amended onset date of July 6, 2013, due to a chemical imbalance, high blood pressure, diabetes, depression, stroke, motor vehicle accident, blockage, head injury, thyroid problems, and neuropathy (Tr. 39, 249).

## Procedural History

On February 26, 2015, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 20, 217-27). Her applications were denied. ALJ James Linehan conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 5, 2016 (Tr. 20-32). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c), with occasional bending, stooping,

crouching, and crawling; standing and walking off and on occurs for six hours out of an eight-hour day with sitting occurring intermittently throughout the rest of the day; frequent pushing, pulling, and reaching overhead with both arms; and frequent gripping, grasping, and feeling (Tr. 26). The ALJ also found the claimant had the following nonexertional limitations: (i) limited to work with a Specific Vocational Preparation ("SVP") level of two or less; (ii) could understand, remember, and carry out ordinary and/or routine written or oral instructions or tasks; (iii) could set realistic goals and make plans independently of others; and (iv) could interact appropriately with supervisors and coworkers, but could interact with the public only incidental to workplace requirements (Tr. 26). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *e. g.*, laundry worker I and linen room attendant (Tr. 30-32).

## Review

The claimant contends that the ALJ erred by: (i) failing to admit records from a prior decision, specifically treatment notes dated November 2009 through January 2011 and a 2011 consultative mental status examination, (ii) failing to order additional consultative examinations, (iii) failing to find her disabled under the Medical-Vocational Guidelines (the "Grids"), (iv) failing to include all of her exertional and nonexertional limitations in the RFC, (v) failing to perform a function-by-function assessment of the RFC, (vi) failing to account for her mental impairments, (vii) failing to properly consider her subjective statements, and (viii) finding she could perform the jobs of laundry worker I and linen room attendant. Because the ALJ failed to provide a narrative discussion

describing how the evidence supports the RFC at step four, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found that the claimant had the severe impairments of diabetes, arthralgias, obesity in combination, depressive disorder, and anxiety disorder, but that her hypertension, hyperlipidemia, and trigger finger were nonsevere (Tr. 23). The relevant medical record reveals that the claimant established care at Pushmataha Family Medical Center ("PFMC") on August 30, 2012, and reported that she had been off her diabetes medications for approximately a year, had a fasting blood glucose level of 269, and had frequent urination, intense thirst, neck pain, dizziness, and fatigue for the past week (Tr. 345-49). Nurse practitioner Gerald Harper found no abnormalities on physical exam, but upon recording the claimant's history of head injury, he indicated that no fine or gross motor function was lost, however mental delay was apparent (Tr. 346). Mr. Harper diagnosed the claimant with diabetes mellitus, hypothyroid, pre-syncope, and hypertension (Tr. 346). By December 2012, the claimant was doing well and had no complaints (Tr. 354). On March 12, 2013, a physical examination revealed a left carotid bruit that the claimant declined to evaluate further due to the cost and how well she was doing, and Dr. Ellis noted she seemed to understand well enough to make a proper decision (Tr. 357). At a follow-up appointment on June 12, 2013, Dr. Ellis noted the claimant's diabetes was very nicely controlled, and that she was alert, oriented, and pleasant, but seemed to have either stoic personality or simple thought processes (Tr. 362). The claimant was doing well and had no complaints in March 2014, and a depression screening was negative in November 2014 (Tr. 368, 372). At a follow-up appointment on September 15, 2015, the claimant

reported pain in her left hand and left middle finger that started a month earlier when she hit her hand on a stove (Tr. 408). Physical examination revealed mild, intermittent triggering of the third digit when making a tight fist which the claimant indicated did not impair her ability to perform activities of daily living (Tr. 408).

Dr. Robert Danaher conducted a consultative mental status examination of the claimant on April 30, 2015 (Tr. 381-87). He observed that the claimant was alert and oriented, and that her speech was logical, goal directed, and fully intelligible, but that she occasionally evidenced problems with word finding skills (Tr. 381). Dr. Danaher administered the Montreal Cognitive Assessment ("MoCA"), the results of which indicated a possible mild cognitive impairment, as well as the Wechsler Memory Scale III and the Trail Making Test (Tr. 383-85). He diagnosed the claimant with major depressive disorder, recurrent, moderate severity (Tr. 385). Dr. Danaher considered the diagnosis of neurocognitive disorder secondary to traumatic brain injury in light of the claimant's MoCA score, but opined the MoCA score was outweighed by her performance on the Wechsler Memory Scale III which did not support significant deficits in attention and memory (Tr. 385). He concluded that the claimant could adequately understand, remember, and carry out simple and complex instructions in a work-related environment (Tr. 386).

Dr. Christopher Sudduth conducted a consultative physical examination of the claimant on June 26, 2015, the results of which were normal (Tr. 391-97). Dr. Sudduth summarized his examination as follows:

> "The claimant had no impairments on any passive range of motion maneuvers during the examination. The claimant had normal gait. She was able to walk on her heels and toes. Straight leg raising test was negative. The claimant kept saying that her memory was poor and that she forgets a lot and that she thinks slowly, but there are no apparent impairments on examination to prevent her ability to work."

(Tr. 397).

State agency physicians reviewed the record in July 2015 and September 2015 and concluded that the claimant's peripheral neuropathy, cerebrovascular accident (late effects of cerebrovascular disease), diabetes mellitus, and essential hypertension were nonsevere (Tr. 97-99).

State agency psychologists reviewed the record in May 2015 and October 2015 and concluded that the claimant's affective disorders were nonsevere (Tr. 99-101, 123-25).

At the administrative hearing, the claimant testified that she was unable to work because she was physically uncomfortable and had mental impairments from an old head injury (Tr. 47). She stated that she experiences pain in her lower back, neck, legs, and feet (Tr. 47). She further stated that she has memory problems as well as difficulty paying attention, following instructions, making decisions, and dealing with people (Tr. 53). The claimant testified that she seeks medical care only when "something is important" because she is unable to afford more frequent treatment (Tr. 48). As to mental health care, the claimant stated that she has had treatment in the past but not recently (Tr. 50). As to specific limitations, the claimant stated that she could walk a few minutes, stand for five minutes, sit for thirty minutes, and lift five pounds, but could not grip or reach overhead (Tr. 50-52).

In his written opinion, the ALJ summarized the claimant's testimony and the medical evidence. He gave great weight to Dr. Sudduth's opinion that the claimant had no impairments preventing her ability to work (Tr. 29). The ALJ also gave great weight to Dr. Danaher's opinion that the claimant could adequately understand, remember, and carry out simple and complex instructions in a work environment (Tr. 29). As to the state agency physicians' opinions, the ALJ gave them partial weight because additional evidence submitted at the hearing level indicated greater limitations than they identified (Tr. 29). Similarly, the ALJ gave partial weight to the state agency psychologists' opinions because evidence submitted at the hearing level, including the claimant's testimony, indicated somewhat greater limitations in concentration, persistence, or pace (Tr. 29). In discussing the claimant's subjective statements, the ALJ concluded that her allegations of disabling physical and mental symptoms were inconsistent with the following: (i) good control of physical impairments with treatment, (ii) Dr. Sudduth's normal consultative examination, (iii) normal physical examination findings by providers at PFMC, (iv) Dr. Danaher's consultative mental status examination, (v) normal mental status examinations by providers at PFMC, (vi) her lack of regular treatment for or complaints of depressive symptoms, and (vii) her denial of depressive symptoms in November 2014 (Tr. 29).

The Court generously construes the claimant's assertion that the ALJ's RFC does not provide a function-by-function evaluation as alleging that the ALJ failed to provide a narrative discussion at step four that describes how the evidence supports the RFC. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical

evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003). Here, the ALJ summarized the evidence and gave great weight to both consultative opinions, but then included additional physical and mental limitations in the RFC without explaining how those limitations specifically accounted for the claimant's severe impairments. This was error. A reviewing court may not properly determine how the ALJ reached the RFC determination when the ALJ "merely summarizes" much of the relevant evidence, states that he considered the entire record, "and then announces his decision." *Brant v. Barnhart*, 506 F. Supp. 2d 476, 486 (D. Kan. 2007) [internal quotation marks omitted]. Thus, while the ALJ's decision does include a recitation of the evidence in the record, he did not link the evidence to his conclusions and such conclusory findings require remand for the ALJ to explain his decision.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 25th day of March, 2019.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**